IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | | |
|---|---|---|
| ADAM HILL, | * | |
| ADC #601559 | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 3:25-cv-00131-JJV |
| | * | |
| MARTY BOYD, | * | |
| Sheriff, Craighead County, *et al.* | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

## I.   INTRODUCTION

Adam Hill ("Plaintiff"), a prisoner in the Arkansas Division of Correction, has filed an

Amended Complaint alleging his constitutional rights were violated while he was a convicted

prisoner at the Craighead County Detention Center ("CCDC"). (Doc. No. 6.) Plaintiff says that

during five periods of confinement at the CCDC, starting in September 2023 and ending in June

2024, Defendants Sheriff Boyd, Administrator Bowers, Assistant Administrator Harrell,

Maintenance Worker Hall, and Maintenance Supervisor Miller were aware of but failed to remedy

black mold and mildew, leaking pipes, and dirty air vents that made him ill. Monetary damage is

the only relief he seeks.

All other Defendants were dismissed without prejudice during screening or on the issue of

exhaustion. (Docs. No. 10, 13, 58.)  And the parties have consented to proceed before me.  (Doc.

24.)

Plaintiff and Defendants have filed Motions for Summary Judgment, Statements of Facts,

Briefs and filed various responses and replies.  (Docs. No. 66-68, 90-98.)   After careful

consideration and for the following reasons, the Defendants' Motion is GRANTED and Plaintiff's Motion is DENIED.

## II.      SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.     FACTS

The parties generally disagree as to facts as outlined in their respective Statement of Facts.

(Docs. No. 67, 92.)  But, considering the facts most favorable to Plaintiff and to make matters simple, I can summarize the facts as follows:  Mr. Hill was a convicted person held in the custody of CCDC for approximately 9 months.  (Doc. No. 92-2 at 1.)  During this time, Mr. Hill experienced  dirty showers, exposure to mold and mildew, broken sinks, leaking toilets, and holes in the ceiling with episodes of leaking water. (Doc. No. 67 at 1-9.)  Maintenance workers failed to inspect or repair the issues complained about to Mr. Hill's satisfaction.  (*Id.* at 6-7.)  As a result, Plaintiff experienced trouble breathing, congestion, a runny nose, watery eyes, and headaches. (Doc. No. 92 at 3-14.)

## IV.    ANALYSIS

### A.    Respondeat Superior

As an initial matter, Defendants argue there is no proof of any personal involvement by Sherrif Boyd.  (Docs. No. 90 at 3;  91 at 3-6.)  I agree.

There is no respondeat superior liability in § 1983 actions.  *Iqbal*, 556 U.S. at 676 (2009); *St. v. Leyshock*, 41 F.4th 987, 989 (8th Cir. 2022).  This means Sheriff Boyd cannot be held liable merely because he employs the individuals who allegedly failed to provide constitutionally adequate conditions of confinement.  *See De Rossitte v. Correct Care Sols., LLC.,* 22 F.4th 796, 804 (8th Cir. 2022).  Instead, the Sheriff can only be held liable in a § 1983 action if "there is a policy, custom or action by those who represent official policy that inflicts [an] injury actionable under § 1983." *Id.*

Plaintiff's Statement of Facts says, "Mr. Boyd admitted that it was Mr. Bowers and Mr. Harrell's responsibility to keep the jail in good living conditions and up to jail standards in 2023 and 2024.  [In] Interrogatory 15 Mr. Boyd denies the presence of mold and mildew but admits to not contacting the EPA or a mold company, how is that even possible?"  (Doc. No. 67 at 6.)

3

Interrogatory 14, which is a part of Plaintiff's Statement of Facts, asked if it was "Mr. Bowers and Mr. Harrell [*sic*] responsibility to keep the jail in good living conditions and up to jail standards in 2023 and 2024" to which Sherrif Boyd answered, "yes, along with other CCDC personnel." (Doc. No. 67 at 98.) Sherrif Boyd's answers are further supported by his affidavit that states, "Because of the wide range of duties of Sherriff…I employ a chain of command to supervise the employees in the various divisions of the sheriff's office." (Doc. No. 92-11 at 1.) Sherrif Boyd goes on to say, "I count on my chain of command to administer the various operations of the detention center pursuant to the policies and procedures I have implemented. . . . I am not generally personally involved in the maintenance and upkeep of the facility involved unless the problem is systemic or not capable of resolution by my staff." (*Id.* at 1-2.)

After careful consideration of Sherrif Boyd's statements, I find Plaintiff has not shown any policy or custom here. On the contrary, the policy in place outlining the policy and procedures for ensuring the jail was clean and sanitary. (Doc. No. 92-6.) Thus, Mr. Hill has not pled a plausible § 1983 claim for relief against Sherriff Boyd and he should be dismissed from this cause of action.

### B.  Qualified Immunity

Defendants argue they are entitled to qualified immunity. (Doc. No. 91 at 24-27.) Qualified immunity bars the recovery of monetary damages from government officials in their personal capacities if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019). Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a

violation of his Eighth Amendment rights; or (2) the particular Eighth Amendment right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful[1].  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021).

Because the "Constitution does not mandate comfortable prisons," only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  To defeat qualified immunity and proceed to trial on his conditions of confinement claim under the Eighth Amendment, Plaintiff must have evidence that: (1) objectively, the conditions he endured constituted a substantial risk of serious harm to his health or safety; and (2) subjectively, the Defendants were deliberately indifferent to the risk of harm posed by the conditions. *See Vandevender v. Sass,* 970 F.3d 972, 975 (8th Cir. 2020); *Hamner v. Burls,* 937 F.3d 1171, 1178 (8th Cir. 2019).

Giving Plaintiff all benefit of the doubt, I conclude he meets the first prong and has shown objectively he endured conditions that posed a substantial risk of harm to his health and safety. But I find no evidence that the remaining defendants, CCDC Administrator Bowers, Assistant Administrator Harrell, CCDC Maintenance Supervisor Miller and Maintenance Worker Hall were deliberately indifferent to the risk posed by the harsh conditions.

I make this finding based upon the Department of Public Safety's Criminal Detention

---

[1] I find Defendants also prevail on the second prong of the qualified immunity analysis.  As was the case in *Thurmond v. Andrews*, 972 F.3d 1007 (8th Cir. 2020), my research fails to uncover any "controlling Eighth Circuit cases addressing prison conditions and issues related to mold or other allergens . . . . As such a reasonable officer could glean little to no guidance from Eighth Circuit precedence about how to address the presence of a common mold in the jail, especially at the levels alleged." *Id.*  at 1013.

Facilities Review Committees who inspected the jail on June 20, 2023, and December 11, 2024. (Doc. Nos. 92-7, 92-8.)  Both parties have provided the Committee's reports as part of their Statement of Facts.  The Committee has no interest in the outcome of this litigation, and I find the report to be an objective analysis of the CCDC.

The report generally paints a grim picture of the jail and recognizes its shortcomings and the ongoing repairs being done by jail staff.  (*Id.* at 2.)  The 2024 report's "Building Status" states:

> During heavy or steady rain, moisture tends to collect in certain areas, and discoloration has appeared due to the building's age.  The County has allocated a significant budget for recent and  upcoming repair projects.  The health department is slated to visit soon to assess the facility's operations.  At times, certain cell areas are offline for maintenance, further straining the available space and population capacity.  Despite these challenges, the County's maintenance team has a strong focus as to updates and repairs.  The Review Committee commends the County staff for their ongoing efforts to maintain the site.

(Doc. No. 92-8 at 2.)

> The Report also says:

> In November 2024, the County placed a jail tax measure on the ballot to fund new solutions, improvements, and large-scale updates to address the jail situation. However, the measure did not pass.  County leaders are continuing to explore possible solutions for the building and operations.  In 2023, the Review Committee recommended the formation of a Criminal Justice Coordinating Committee [ ] to address the facility's population, limited space, staffing, and related challenges.  In 2024, the jail team launched a collaboration with a national technical support/consultant.  The jail staff is also working with local stakeholders and the courts to reduce the onsite population.  The peer support program, in particular, helps reduce the onsite population by facilitating transfers of inmates for offsite housing and other programs. On a typical month, the jail releases approximately 200 inmates in efforts to reduce overcrowding.  Additionally, inmates are frequently booked and immediately released (on an almost daily basis) to manage population levels.  The Review Committee appreciates the county leaders, criminal justice stakeholders, and others as the community considers a wide range of options.

(*Id.* at 3.)

The Report concludes, "The Review Committee appreciates the ongoing efforts of the

6

professional staff and commends their dedication to the community." (*Id.*) Despite pointing out the CCDC's shortcomings, the Criminal Detention Facilities Review Committee had nothing but praise for the maintenance team and the jail administration.

The United States Court of Appeals for the Eighth Circuit has explained that deliberate indifference is a "stringent standard of fault" that is much higher than negligence or even gross negligence. *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010); *see also Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023). Instead, it requires "proof of a reckless disregard of the known risk." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) (emphasis added). Plaintiff has not provided proof of such reckless disregard.

Plaintiff responds generally that Defendants knew of these shortcomings but failed to resolve them. (Doc. No. 94.) He says, "Defendant claims that the jail did not have any 'black mold or mold' but how can they know for sure [when] they failed to have the mold and mildew tested when [he] reported it by grievances. . . . Just the threat of mold and mildew should have been enough to have [it] tested." (Doc. No. 94 at 3.) Plaintiff makes a fair point, but the Review Committee noted that the existing facilities were generally "in compliance." (Doc. 92-8 at 7-8.) Those items "out of compliance" were the cells' size and space requirements, a lack of an observation cell for special housing areas, and not having a designated space for administrative and staff functions. (*Id.*)

After careful review, I find nothing to support a finding that Defendants recklessly disregarded any risk caused by the jail's disrepair. Rather, the report shows Defendants were actively engaged in trying to repair an old jail in disrepair. This is also evidenced by the Maintenance Logs that were submitted as a part of Defendants Motion (Doc. No. 92-5) and Plaintiff's Response. (Doc. No. 94 at 32-37.) The logs show a number of ongoing issues and

repairs – proof that I find shows Defendants were not deliberately indifferent to the issues at the CCDC.

For these reasons, I conclude the evidence viewed in the light most favorable to Plaintiff does not establish an Eighth Amendment violation. The evidence fails to support a claim that Defendants were deliberately indifferent to the risk of harm posed by the conditions at the CCDC.

I realize Plaintiff believes he suffered a constitutional violation while being held at the CCDC. That is evident upon review of the numerous grievances Plaintiff filed. (Doc. No. 92-3.) It appears that many of Plaintiff's issues could have been resolved through the administrative process had jailers been more forthcoming with information about the ongoing efforts to repair the CCDC. Instead, Mr. Hill was met with unhelpful responses like, "a lot of things will make your nose bleed," (*id.* at 5), "ok," (*id.*), and "why are you scared? you have stated this in the last 10 requests?" (*Id.* at 8.)

Nevertheless, I find Defendants Boyd, Bowers, Harrell, Hall, and Miller are entitled to qualified immunity as they were not deliberately indifferent to any risk posed to Plaintiff. It is my hope that they continue to work diligently to try and patch up the CCDC and receive the necessary funding to make meaningful improvements to the jail.

## V.    CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. 90) is GRANTED.

2.    Plaintiff's Motion for Summary Judgment (Doc. No. 66) is DENIED.

3.    Plaintiff's Eighth Amendment claims against Defendants Boyd, Bowers, Harrell, Hall and Miller are DISMISSED with prejudice, and this case is CLOSED.

4.    I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from

8

this Memorandum and Order would not be taken in good faith.

DATED this 20th day of May 2026.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE